IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| DAVID CLARK, | ) | CV. NO. 09-00184 DAE-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| GOODWILL INDUSTRIES OF | ) | |
| HAWAII, INC.; ATINA | ) | |
| SAMPSON; and DOES 1-10, | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER:  (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; (2) GRANTING DEFENDANT'S COUNTER MOTION FOR
SUMMARY JUDGMENT; AND (3) DISMISSING THE CASE
WITH PREJUDICE

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing the motions and supporting and

opposing memoranda, the Court:  (1) **DENIES** Plaintiff's Motion for Summary

Judgment (Doc. # 52.); (2) **GRANTS** Defendant's Counter Motion for Judgment

on the Pleadings or in the Alternative for Summary Judgment (Doc. # 63); and (3)

**DISMISSES** the case with prejudice.  The Clerk of the Court is hereby directed to

enter judgment in favor of Defendants.

BACKGROUND

On April 22, 2009, pro se plaintiff David Clark ("Plaintiff") filed the original Complaint in this case, alleging that, while employed as an Employment Counselor-Trainer at Goodwill Industries of Hawaii, Inc. ("Goodwill" or "Defendant") from approximately August 8, 2005 through August 25, 2008, he was subject to:  unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; retaliatory discharge resulting from whistle-blowing; defamation of character; and other civil rights violations.  (Doc. # 1 at 2, 30.)  Plaintiff brought this claim against Goodwill, various Goodwill employees, and unnamed individual defendants (collectively, "Defendants").

On June 12, 2009, Defendants filed a Motion to Dismiss Complaint as to Individual Defendants, and for an Order (1) Striking Impertinent, Immaterial, Redundant, and Scandalous Matters, or, in the alternative, (2) For a More Definite Statement, and (3) Extending the Time to Respond to the Complaint.  (Doc. # 22.)

In an order filed September 21, 2009 (the "September 21, 2009 Order"), the Court dismissed Plaintiff's claims against individual defendants Confalone, Moskowitz, Boyd, Jones, Cain, Morimoto, Aki-Marcos, and Lorenzo for failure to state a claim upon which relief could be granted.  (Doc. # 47 at 23.) Defendants Goodwill, Atina Sampson, and Does 1-10 remained.  The Court also

2

granted in part and denied in part Defendants' motion to strike certain portions of the Complaint.  (Id. at 28.)  The Court directed Plaintiff to file a First Amended Complaint within 20 days, and therefore denied as moot Defendants' motion for a more definite statement and motion to extend time to respond to the Complaint. (Id. at 28-29.)

On October 1, 2009, Plaintiff filed the First Amended Complaint ("FAC") against Goodwill, Sampson, and Does 1-10.  (Doc. # 48.)  Plaintiff again asserts that he was subject to racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., retaliation in violation of Title VII, and breach of contract in violation of 42 U.S.C. § 1981.  (Id. at 23-26.)

On November 2, 2009, Plaintiff filed a Motion for Summary Judgment as to all counts.  (Doc. # 52.)  On December 29, 2009, Goodwill filed an Opposition to Plaintiff's Motion and a Counter Motion for Judgment on the Pleadings or, in the Alternative, Motion for Summary Judgment.  (Doc. # 63.)  On January 4, 2010, Plaintiff filed a Reply in support of his Motion and an Opposition to Defendant's Counter Motion.  (Doc. # 65.)  Defendant did not timely file a Reply in support of its Counter Motion.

3

<u>STANDARD OF REVIEW</u>

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> <u>Porter v. Cal. Dep't of Corrections</u>, 419 F.3d 885, 891 (9th Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  "A material fact is one which may affect the outcome of the litigation." <u>Commodity Futures Trading Comm'n v. Savage</u>, 611 F.2d 270, 282 (9th Cir. 1979).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at 323.  A moving party without the ultimate burden of persuasion at trial -- usually, but not always, the defendant -- has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of

material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

   Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and may not rely on the mere allegations in the pleadings. Porter,

419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)). In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary

judgment, the court shall have no independent duty to search and consider any part

of the court record not otherwise referenced in the separate concise statements of

the parties."). "[A]t least some 'significant probative evidence'" must be

produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v.

Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence

that is merely colorable or not significantly probative does not present a genuine

issue of material fact." Addisu, 198 F.3d at 1134.

   When "direct evidence" produced by the moving party conflicts with

"direct evidence" produced by the party opposing summary judgment, "the judge

must assume the truth of the evidence set forth by the nonmoving party with

respect to that fact." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving

party.  <u>Porter</u>, 419 F.3d at 891.  The court does not make credibility determinations

or weigh conflicting evidence at the summary judgment stage.  <u>Id.</u>  However,

inferences may be drawn from underlying facts not in dispute, as well as from

disputed facts that the judge is required to resolve in favor of the nonmoving party.

<u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

<u>DISCUSSION</u>

The violations alleged to give rise to this action are not coherently

presented in the FAC and are difficult to discern.  The Court acknowledges that

Plaintiff is proceeding pro se and so will liberally interpret Plaintiff's FAC.  The

Court notes, however, that this Court has already once before reviewed Plaintiff's

complaint and found serious deficiencies in its organization and statement of

claims, rendering it difficult for this Court to evaluate Plaintiff's arguments.

Indeed, these deficiencies were identified in the September 21, 2009 Order, which

struck significant portions of Plaintiff's complaint but liberally construed

Plaintiff's complaint to avoid dismissal.  The Court granted Plaintiff leave to

amend.  In now reviewing the instant motions for summary judgment, the Court

6

expects both parties to provide "significant probative evidence."  T.W. Elec. Serv.,

809 F.2d at 630.

II.    Title VII Claims

    A.    Exhaustion of Administrative Remedies

       For this Court to have subject matter jurisdiction over this Title VII

claim, Plaintiff must have first exhausted his administrative remedies by timely

filing a charge with the U.S. Equal Employment Opportunity Commission

("EEOC") and obtaining a right-to-sue letter.  See 42 U.S.C. § 2000e-5(e);

Greenlaw v. Garrett, 59 F.3d 994, 997 (9th Cir. 1995) ("To litigate a Title VII

claim in federal district court, plaintiff must have exhausted her administrative

remedies.").

       Plaintiff filed a Charge of Discrimination with the EEOC on

September 29, 2008.  (Compl. Ex. 1.)  Plaintiff indicated on the Charge that the

complaint was based on race discrimination and retaliation.  (Id.)  The Charge

referenced those alleged violations that form the basis of Plaintiff's claim before

this Court.  Specifically, the submission referred to an e-mail which referred to

Plaintiff as a "nigga," alleged that Plaintiff had been subject to disparate treatment

with respect to the hours and schedule he was expected to follow at work, and

alleged that he was discriminated against after complaining to a supervisor that

Micronesian clients were receiving preferential treatment compared to non-Micronesian clients.  (Id.)

On February 20, 2009, the EEOC issued Plaintiff a Right to Sue letter, indicating that Plaintiff must file suit within 90 days of receipt of the notice.  (Doc. # 1 Ex. 2.)  Plaintiff filed the original complaint on April 22, 2009, within 90 days of receipt of the notice.

Accordingly, the Court finds that Plaintiff has properly exhausted his administrative remedies.[1]

B.    Race Discrimination (Count I)

Plaintiff alleges both race discrimination and retaliation in violation of Title VII.  The Court will first address Plaintiff's race discrimination claim.

1.    Title VII Protections Against Race Discrimination

Title VII forbids employment discrimination against any individual based on that individual's "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  A plaintiff alleging disparate treatment under Title VII must first establish a prima facie case of discrimination by offering evidence that "give[s]

---

[1] Defendant notes that one incident at issue in Plaintiff's Title VII claim, an e-mail transmission of a racial slur, occurred more than 300 days before Plaintiff filed his EEOC charge.  (Def. Opp'n at 16.)  This e-mail is not the only basis for Plaintiff's complaint, however, and therefore the Court deems Plaintiff's Charge timely.

rise to an inference of unlawful discrimination." <u>Tex. Dep't of Cmty. Affairs v.</u> <u>Burdine</u>, 450 U.S. 248, 253 (1981); <u>see</u> <u>EEOC v. Boeing Co.</u>, 577 F.3d 1044, 1049 (9th Cir. 2009).  A plaintiff may establish a prima facie case either by meeting the four-part test laid out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), or by providing direct evidence suggesting that the employment decision was based on an impermissible criterion.  <u>Cordova v. State Farm Ins. Cos.</u>, 124 F.3d 1145, 1148 (9th Cir. 1997).  A prima facie case requires a plaintiff to offer proof that:  (1) he belongs to a protected class; (2) he performed his job adequately or satisfactorily; (3) he suffered an adverse employment action; and (4) other similarly situated employees who do not belong to the same protected class were treated differently.  <u>Cornwell v. Electra Cent. Credit Union</u>, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing <u>McDonnell Douglas</u>, 411 U.S. at 802); <u>see</u> <u>Noyes v. Kelly</u> <u>Servs.</u>, 488 F.3d 1163, 1168 (9th Cir. 2007).  Transferring job duties, or actions that negatively affect the employee's compensation have been found to constitute adverse employment actions.  <u>Fonseca v. Sysco Food Servs. of Ariz., Inc.</u>, 374 F.3d 840, 847 (9th Cir. 2004); <u>Yartzoff v. Thomas</u>, 809 F.2d 1371, 1376 (9th Cir. 1987).  Being excluded from meetings, seminars, and positions that would have made the employee eligible for salary increases, and being given a more burdensome work schedule, if proven, were sufficient to establish adverse

9

employment actions.  Strother v. S. Cal. Permanente Med. Group, 79 F.3d 859, 869 (9th Cir. 1996).  In addition, undeserved performance ratings can constitute an adverse employment action.  Yartzoff, 809 F.2d at 1378.  However, a mediocre performance rating that does not give rise to any further negative employment action does not constitute an adverse employment action.  Kortan v. Cal. Youth Auth., 217 F.3d 1104, 1112-13 (9th Cir. 2000).

"Similarly situated" employees are those who have similar jobs and display similar conduct.  See Metoyer v. Chassman, 504 F.3d 919, 950 (9th Cir. 2007) (citing Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006) and Vasquez v. County of L.A., 349 F.3d 634, 641(9th Cir. 2004)).  Moreover, "[e]mployees in supervisory positions are generally deemed not to be similarly situated to lower level employees."  Vasquez v. County of L.A., 349 F.3d 634, 641 (9th Cir. 2004).

If the plaintiff meets this burden of establishing a prima facie case, the defendant must produce evidence showing a nondiscriminatory reason for the employment decision.  Cornwell, 439 F.3d at 1028.  Then, "a plaintiff may defeat a defendant's motion for summary judgment by offering proof that the employer's legitimate, nondiscriminatory reason is actually a pretext for racial discrimination."  Id.  This proof may be either direct or circumstantial evidence, but must be specific and substantial.  Id. at 1029.

2.      Factual Basis for Claim

Plaintiff, self-identified as African American, claims to have been subject to racial discrimination by non-African American coworkers and supervisors.  In the FAC, Plaintiff offers three examples of purported discrimination based on race.  For the reasons set forth below, the incidents, whether considered separately or together, fail to establish racial discrimination.

First, Plaintiff submits an e-mail dated January 19, 2006 wherein a coworker, Atina Sampson, refers to Plaintiff as a "nigga."  (FAC Ex. 6; Def. Opp'n Ex. J.)  Sampson herself is identified as African American and Latino.  (Pl. Opp'n Ex. 9.)  In the e-mail, Sampson appears to complain about Plaintiff's organizational skills.  This e-mail was intended to go to another coworker, Cicely Lorenzo, but was accidentally "cc'd" to Plaintiff and employees as well.[2]  Upon being informed of the e-mail incident, Ann Boyd, Director of Workforce Development for Goodwill, issued a formal warning to Sampson and required her to make a formal written apology.  (Boyd Opp'n Decl. ¶ 9.)  The formal warning put Sampson on notice that further incidents could result in termination, and also directed Sampson to the company's policies on harassment.  (Def. Opp'n Ex. K.)

---

[2] In Plaintiff's own answer to Defendant's request for Interrogatories, Plaintiff refers to the e-mail as an "accident."  (Def. Opp'n Ex. L at 3.)

Second, Plaintiff alleges that he was treated differently from other coworkers because other coworkers were allowed to modify their work hours while he was not.  According to Plaintiff, whereas other coworkers were freely allowed to change their schedules, he was questioned each time and was sometimes prevented from changing his work hours.  (FAC at 7-9.)

Third, Plaintiff contends that when he worked at Goodwill's Kapolei office, he was required to conduct work and manage a caseload that was outside of the job description.  (Id. at 9-11.)

To support his racial discrimination claim, Plaintiff does not offer probative evidence outside of the conclusory assertions made in his FAC.  Plaintiff relies exclusively on the pleadings to support his motion for summary judgment. For example, Plaintiff recounts that "Plaintiff has offered evidence as stated in the Complaint in support of evidence that the Defendant's reasons was false."  (Pl. Mot. at 10.)  Likewise, Plaintiff's concise statement of facts[3] cites to only the allegations made in the FAC or in Defendant's Answer as supposed evidence of a fact.  (Id. at 15-22.)  The same is true for Plaintiff's concise statement of facts in opposition to Defendant's counter motion for summary judgment.  (Pl. Opp'n at

---

[3] The Court notes that Plaintiff's concise statement of facts was not submitted separately, but was in fact inserted directly into the middle of his supporting memorandum, in contravention to Local Rule 56.1 .

17-27.)   Plaintiff has therefore utterly failed to offer any evidence in the form of affidavits or otherwise to support his motion for summary judgment or to oppose Defendant's counter motion for summary judgment.  Plaintiff does, however, ask this Court to refer to exhibits submitted along with the FAC.  To the extent that Defendant does not dispute those exhibits attached to the FAC, the Court will consider those documents in evaluating the parties' motions for summary judgment.

Turning to the e-mail incident, Plaintiff cannot prevail on his racial discrimination charge for two reasons.  First, as Defendant notes, the e-mail transmission occurred more than 300 days prior to the date Plaintiff filed his EEOC Charge, and may therefore be time-barred.  Even if it were not time-barred, however, the incident is insufficient to demonstrate racial discrimination.  The Court acknowledges that the e-mail may be considered crude and insensitive, but there is no indication that it was anything more than a single communication between individual coworkers that was intended to be private.  This does not rise to the level of a Title VII violation.  "[N]ot all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII."  Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986).  "[M]ere utterance of an ethnic or racial epithet which engenders

13

offensive feelings in an employee does not affect the terms, conditions or privileges of employment to a sufficiently significant degree to violate Title VII." Id. (quoting Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982)); see Hardage v. CBS Broad., Inc., 427 F.3d 1177, 1183 (9th Cir. 2005).  Here, there is only a single alleged incident of transmission of a racial epithet via e-mail.  There is no evidence of "pervasive" racial hostility.  See McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1112 (9th Cir. 2004); see also Manatt v. Bank of Am., 339 F.3d 792, 795, 798-99 (9th Cir. 2003) (holding that multiple racially-motivated jokes and incidents of mockery were not sufficiently pervasive to alter conditions of employment).  Therefore, the incident, as a matter of law, does not rise to the level of a Title VII violation.  Further, Goodwill management took immediate action to condemn the e-mail and discipline the coworker who sent it.

Plaintiff's work schedule allegation also fails for two reasons.  First, there is absolutely no evidence before the Court that such disparity between Plaintiff's requests and other coworkers' requests, assuming there was any, was racially motivated.  In fact, on its face Plaintiff's assertions demonstrate another plausible explanation.  Plaintiff requested a flexible and unpredictable schedule, which itself could be denied by Defendant because the work place policies require that employees arrive and leave on time.  By his own words, Plaintiff "attempted to

use his lunch time at any given time of the day."  (FAC at 8.)  Plaintiff then has the

burden to show evidence that Defendant's reason is a pretext, but Plaintiff has not

done so.  There is no direct evidence, such as explicit racial slurs or comments

related to any work-schedule incident.  Plaintiff has also not provided "specific" or

"substantial" circumstantial evidence.  Cornwell, 439 F.3d at 1029.  Plaintiff does

not document any particular incident, nor does Plaintiff allege the race of those

other coworkers allowed to change their work schedule.  Second, allowing an

employee to modify his work hours has not been identified as a protected activity

under Title VII.  There is no indication that not allowing Plaintiff to modify his

work hours would impact salary, opportunities for advancement, or result in any

other negative employment action.

Likewise, there is no evidence that any increase in workload while at

the Kapolei office was racially motivated.  Indeed, the Job Description handout

that Plaintiff attaches as an exhibit to his FAC explicitly states that "other duties

may be assigned."  (FAC Ex. 5 at 1.)  Plaintiff does not refute this fact, and the

Court is therefore left with uncontested evidence that Plaintiff's job description

included the potential for additional work.  Moreover, Plaintiff himself admits in

the FAC that his increased workload was due, at least in part, to the fact that two

other coworkers left Goodwill, and he had to temporarily take over their caseload.

(<u>Id.</u> at 11-12.)  According to Plaintiff, "Defendant assigned Plaintiff the case files of the two employment counselors [who had quit] and informed Plaintiff that 'the files would only be temporary until new employment counselors were hired.'" (<u>Id.</u>)  Plaintiff himself acknowledges a non-racially motivated reason for this workload.

Plaintiff has failed to establish a prima facie case of racial discrimination and failed to offer any probative evidence to dispute the evidence submitted by Defendant.  Accordingly, Defendant's motion for summary judgment is granted, and Count I as to racial discrimination is DISMISSED WITH PREJUDICE.

C.     <u>Retaliation (Counts I and II)</u>

Plaintiff claims that he was suspended and terminated in retaliation for "blowing the whistle on Defendant for granting Micronesians preferential treatment."  (Pl. Mot. at 7.)  According to Plaintiff, Micronesian clients were given preferential treatment over non-Micronesian clients.  (FAC at 12.)  For example, Plaintiff states that $1,000 was processed for a Micronesian client without proper paperwork processing.  (<u>Id.</u> at 20.)  When Plaintiff reported this alleged preferential treatment to a supervisor, the supervisor allegedly became angry,

16

would not talk to Plaintiff, and subsequently interfered with Plaintiff's work by

taking Plaintiff's work files and demanding "accountability."  (Id. at 12-13.)

Title VII protects against certain forms of retaliation in the workplace:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter [42 U.S.C. §§ 2000e to 2000e-17], or because he has made a charge, testified, assisted, or participated in any manner in an investigation proceeding, or hearing under this subchapter.

Title VII, 42 U.S.C. § 2000e-3(a) (emphasis added).

Pursuant to section 2000e-3(a), retaliation is actionable under Title

VII only if the employer retaliated against an employee after that employee

opposed a practice that itself violated Title VII.  In other words, the employee must

have opposed what was perceived as discrimination under Title VII, regarding

actions that are protected under the statute.  See Learned v. City of Bellevue, 860

F.2d 928, 932 (9th Cir. 1988) ("[T]he opposed conduct must fairly fall within the

protection of Title VII to sustain a claim of unlawful retaliation."); see also Silver

v. KCA, Inc., 586 F.2d 138, 142 (9th Cir. 1978) ("[U]nder the clear language of the

'opposition' clause . . . a case of retaliation has not been made out unless the

'retaliation' relates to the employee's opposition to a [Title VII] violation.");

Stucky v. Dep't of Educ., 283 Fed. Appx. 503, 505 (9th Cir. 2008).

In this case, Plaintiff alleges he suffered retaliation as a result of reporting preferential treatment given to Micronesian clients.  The "protected activity," therefore, in which Plaintiff claims to have engaged was submitting a complaint to his supervisor about purported preferential treatment that Plaintiff's coworkers were giving certain clients.  The protected activity was not the act of filing the EEOC charge itself, because that did not occur until <u>after</u> Plaintiff was placed on administrative leave and after he was fired.[4]

The retaliation must relate to Plaintiff's opposition to a Title VII violation.  Even assuming that the employees gave preferential treatment to certain clients, that itself is not a violation of Title VII.  Title VII protects employees or applicants from unlawful <u>employment actions</u>.  The clients were not employees, nor were they seeking employment.  Nor was Plaintiff reporting what he believed was a "pattern or practice" of Goodwill; instead, he was making complaints about actions of particular employees.  It may be that the alleged preferential treatment is actionable under other state laws, but that question is not before this Court today.  Plaintiff cannot claim retaliation under Title VII on these grounds.

––––––––––––––––––

[4] On August 5, 2008, Plaintiff was placed on administrative leave.  (FAC  at 15.)  On August 25, 2008, Plaintiff's employment was terminated.  (<u>Id.</u> at 16.)  On September 29, 2008, Plaintiff filed his EEOC Charge.  (Compl. Ex. 1.)

Moreover, Defendant has submitted evidence of non-retaliatory reasons for Plaintiff's discharge, which Plaintiff has failed to refute.  Namely, Defendant contends that Plaintiff had executed forms to release funds to pay for childcare provided by his wife.  (Def. Opp'n at 5.)  Plaintiff was placed on administrative leave pending the investigation.  Based on the results of the investigation, three supervisors recommended termination.  (Id. at 7.)  Defendant submits the declarations of Vice President of Human Services Daniel Moskowitz, Vice President of Administration Ryan Kusumoto, and President Laura Robertson, all claiming that they had not been informed of Plaintiff's client-preference allegations until after the firing had occurred.  According to their declarations, any complaint of alleged preferential treatment "had no bearing on their decision" to terminate Plaintiff.  (Def. Opp'n at 8; Kusumoto Decl. ¶ 8; Moskowitz Decl. ¶ 26; Robertson Decl. ¶ 6.)

Plaintiff disputes that Moskowitz, Kusumoto, and Robertson were unaware of his preferential treatment allegations, but does not offer any probative evidence to dispute their declarations.  To the contrary, the letter signed by Plaintiff referencing the alleged preferential treatment itself indicates that Defendant had not been informed of the preferential treatment until after Plaintiff was terminated.  (Def. Opp'n Ex. F) Although the letter written by Plaintiff is

19

dated August 21, 2008,[5] the letter references the fact that Plaintiff had been terminated, which did not occur until August 25, 2008.  Plaintiff states in the letter: "I make [sic] a clear mistake and attempted to do employment duties that I was not hired to do, but I get terminated after three years of outstanding. [sic] . . . This is unfair and I am making this grievance complaint. . . . My personal belongings was [sic] boxed up and a warning statement was issued that is checked off that I am terminated . . . ."  (Def. Opp'n Ex. F at 2.)  The undisputed time line of events leaves this Court no alternative but to conclude that this letter was not presented to the supervisors until after the decision to terminate Plaintiff had been made.  As this letter is the only evidence on record, and as it was presented after Plaintiff was terminated, the alleged preferential treatment complaints cannot logically be considered a basis for Plaintiff's suspension or termination.

Plaintiff has failed to establish a prima facie case of retaliation and failed to offer any probative evidence to dispute the evidence submitted by Defendant.  Accordingly, Defendant's motion for summary judgment is granted and Counts I and II as to retaliation are DISMISSED WITH PREJUDICE.

---

[5] The Court further notes that the date, August 21, 2008, is after Plaintiff was suspended on August 5, 2008.  The information in the letter about the preferential treatment could not have played a role in the decision to suspend Plaintiff.

20

III.   42 U.S.C. § 1981 (Count II)

Section 1981 provides that "all persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  Section 1981 creates a cause of action only for those discriminated against on account of their race or ethnicity.  See, e.g., Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1122-23 (9th Cir. 2008); Jones v. Bechtel, 788 F.2d 571, 574 (9th Cir. 1986).  A plaintiff asserting a claim under section 1981 "must show intentional discrimination on account of race."  Evans v. McKay, 869 F.2d 1341, 1344 (9th Cir. 1989).

Plaintiff contends that "because of the pretext for wrongful discharge," Plaintiff is entitled to recover for "breach of the employment relationship contract."  (FAC at 26-27.)  Plaintiff does not fully explain this count, however, the Court will liberally construe this claim to encompass both Plaintiff's race allegations and "whistle-blowing" allegations.  Even under this liberal interpretation, however, Plaintiff's claim is meritless.

To prevail on this claim, Plaintiff must show that verbal or physical conduct based on his race was "sufficiently severe or pervasive to alter the conditions of his employment and create an abuse work environment."  Johnson, 534 F.3d at 1122.  When considering whether conduct was "severe or pervasive," a

court must "look to 'all the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" <u>Id.</u> (citations omitted).

Plaintiff has not met his burden to demonstrate that racially discriminatory conduct was severe and pervasive.  There is only one documented incident of a racial slur by a fellow African American employee in a single e-mail.  It is questionable whether this e-mail was timely submitted in the EEOC Charge.  Moreover, incidents of this nature, although unfortunate, are merely offensive and are not considered to rise to the level required to prevail on this claim, as discussed above.  The other action complained of, retaliation for his complaint about preferential treatment of certain clients, is not itself based on racial discrimination against Plaintiff.  Left with only a single e-mail incident to consider, the Court concludes that Plaintiff is unable to make a prima facie showing of a section 1981 violation.

Accordingly, Defendant's motion is granted, and Count II as to the section 1981 violation is DISMISSED WITH PREJUDICE.

Because this Court has granted Defendant's motion for summary judgment in its entirety, the Court need not rule on Defendant's alternative request for judgment as a matter of law.

## IV.   Intentional Infliction of Emotional Distress

Plaintiff's motion for summary judgment includes allegations of intentional infliction of emotional distress (Pl. Mot. at 24.)  Plaintiff did not, however, properly assert an IIED claim in his original Complaint, as described in this Court's September 20, 2009 Order.  Because the Court did not grant Plaintiff leave to add additional counts in the FAC, there is no IIED claim currently before this Court.  Accordingly, the Court will disregard those portions of Plaintiff's motion that seek to advance evidence of intentional infliction of emotional distress.

## V.   Claims against Atina Sampson and Doe Defendants

Plaintiff moves for summary judgment on his entire complaint.  Upon review of the FAC and Plaintiff's motion for summary judgment, it is not entirely clear whether Plaintiff is pursuing any particular claim against Atina Sampson. Although Sampson is listed as a defendant and was involved in the e-mail incident, Plaintiff does not expressly request judgment again Sampson in the FAC.  Instead, Plaintiff demands judgment solely against Goodwill.  (FAC at 28.)  The Court may, therefore, deem Plaintiff's claims against Sampson abandoned or withdrawn.

23

Alternatively, had Plaintiff pursued any of the above-listed claims against Sampson, those claims would fail as a matter of law.  First, there is no viable claim for IIED here.  Second, no Title VII claim may be brought against Sampson.  The Ninth Circuit has consistently held that Title VII liability does not extend to individual employees, even those in supervisory roles.  E.g., Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1179 (9th Cir. 2003) ("Title VII does not provide a cause of action for damages against supervisors or fellow employees.").  Third, Plaintiff does not assert any contract between Sampson and Plaintiff and there can be no section 1981 claim against Sampson.  Accordingly, all claims against Sampson, if any, are hereby DISMISSED WITH PREJUDICE.

Plaintiff does not identify Does 1-10, and it appears from the complaint that there is no viable claim.  Accordingly, the complaint is DISMISSED WITH PREJUDICE as to Does 1-10 as well.

CONCLUSION

For the reasons stated above, the Court:  (1) DENIES Plaintiff's Motion for Summary Judgment; (2) GRANTS Defendant's Counter Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment; and (3) DISMISSES the case with prejudice.

24

The Clerk of the Court is hereby directed to enter judgment in favor of Defendants.

IT IS SO ORDERED.


DATED:  Honolulu, Hawaii, January 11, 2010.



_____
David Alan Ezra
United States District Judge


Clark v. Goodwill Industries of Hawaii, Inc. et al., CV. NO. 09-00184 DAE-LEK; ORDER: (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; (2) GRANTING DEFENDANT'S COUNTER MOTION FOR SUMMARY JUDGMENT; AND (3) DISMISSING THE CASE WITH PREJUDICE